[No. G009929. Fourth Dist., Div. Three. Apr. 30, 1991.]

In re AMELIA S. et al., Minors.
ORANGE COUNTY SOCIAL SERVICES AGENCY, Petitioner and Respondent, v.
ANGEL R., Objector and Appellant.

**COUNSEL**

Steven D. Schatz, under appointment by the Court of Appeal, for Objector and Appellant.

Adrian Kuyper, County Counsel, and Christopher J. Miller, Deputy County Counsel, for Petitioner and Respondent.

Harold LaFlamme, under appointment by the Court of Appeal, for Minors.

**OPINION**

**SONENSHINE, J.**—Angel R. appeals the trial court's orders terminating his parental rights to his 10 minor children. He contends there was no evidence to support the court's finding the minors were adoptable; thus, termination of his parental rights was premature. (Welf. & Inst. Code, § 366.26, subds. (c)(1) & (c)(2).)[1] We agree and reverse accordingly.

---

[1] All statutory references are to the Welfare and Institutions Code.

## I.

Nine of appellant's ten children, ranging in age from one to nine years, were taken into protective custody on April 17, 1989, while appellant and his wife were panhandling in an Anaheim parking lot. The children were filthy, improperly clothed, and had not eaten that day. Several of them had never attended school. The parents were arrested for being under the influence of a controlled substance and for child neglect, and were incarcerated in Anaheim city jail.

Appellant had an extensive criminal background dating back to 1975. He had been arrested for, among other things, being under the influence of a controlled substance, unlawful possession of a controlled substance, transporting and selling a controlled substance, burglary, receiving stolen property, assault, battery, armed robbery, and statutory rape. Also on file were a number of reports of child abuse in Orange County, San Joaquin County and Santa Cruz County.

Petitions to declare the children dependents of the court were filed on April 19. (§ 300, subds. (b) & (g).) On May 2, appellant's wife gave birth to child number 10, who was taken into protective custody a few days later. A petition to declare the infant a dependent child was filed on May 9. (§ 300, subds. (b), (g) & (j).) At an uncontested dispositional hearing held August 3, the minors were declared dependent children of the juvenile court and were placed in various foster homes.[2]

A six-month review hearing was held February 15, 1990. Attempts to locate appellant and his wife proved futile, and declarations to that effect were filed with the court. The court terminated reunification services and ordered that a hearing to terminate parental rights under section 366.26 be held within 120 days. As authorized by the court, the social services agency (SSA), during April, published notices of the upcoming June 1 hearing.

Two supplemental court reports were prepared for the permanency hearing, each covering five of the ten children. The reports indicated the following: Amelia, Antonio and Adrian were together in one foster home, and Angelo and Angela together in another; in each instance, the foster parents were *considering* adoption. Angel and Ariel had been placed together in one foster home, and Adam and Armando together in another; both sets of

---

[2]The names and birth dates of the children are as follows: Amelia, born October 3, 1979; Antonio, born September 10, 1981; Adrian, born August 21, 1982; Ariel, born June 26, 1983; Angel, born May 29, 1984; Angelo, born April 19, 1985; Angela, born March 14, 1986; Armando, born April 1, 1987; Adam, born April 12, 1988; and Andria, born May 2, 1989.

foster parents did *not* wish to adopt the children. Andria was alone in a foster home; her foster parents had no intention of adopting her.

The report relating to Amelia, Adrian, Antonio, Angel and Armando states: "The minors were found to be adoptable. Recruitment for prospective adoptive families has been initiated and several possible families have already been identified." It further indicates the three older children had "mixed feelings" about adoption; however, they were "happy about the idea that all the siblings can be placed together, yet they have also stated a desire to remain in their current placement."

Although the children had various developmental, emotional and physical problems, some of a serious nature, both reports recommended "the Court find that there is clear and convincing evidence that it is likely the minors will be adopted, and that the Court order the parental rights of the minors' parents, in relation to the minors, be terminated . . . and the minors be referred to the County adoption agency for adoptive placement . . . ."

The permanency hearing proceeded as scheduled, and the default of appellant and his wife was taken. On July 9, orders terminating the parental rights of both parents were filed.[3]

The record has been augmented at appellant's request to reflect the August 1990 filing of modification petitions pertaining to each child, indicating: "The minor is a special needs child in that the minor is part of a sibling set of ten. The minor suffers from social delays as well. Due to the above circumstances, Orange County Adoptions considers the minor a hard to place child." Appellant informs us the purpose of the modification petitions was to obtain authorization to broadcast videotapes of the children to recruit adoptive families. Reports filed in September also describe the minors as "hard to place" children.

## II.

Appellant does not challenge the removal of the minors from his custody. Nor is there any indication he hopes to have the children returned to him. Rather, his appeal is essentially a recital of alleged procedural defects. One of his claims does have merit, however, and requires reversal.

█ Appellant contends the court erred in terminating his parental rights because his children were not then adoptable within the meaning of

---

[3] Appellant's wife is not a party to this appeal.

section 366.26, subdivision (c); thus, the threshold element of the statute was not established. He asserts, "If ever there was a case where the children were not adoptable, this is it."

Section 366.26 provides for termination of parental rights to minors declared dependent children of the court on or after January 1, 1989. Subdivision (b) authorizes a permanency hearing, at which the court has four options: "(1) Permanently sever the parent or parents' rights and order that the child be placed for adoption. [¶] (2) Without permanently terminating parental rights, identify adoption as the permanent placement goal and order that efforts be made to locate an appropriate adoptive family for the minor for a period not to exceed 60 days. [¶] (3) Without permanently terminating parental rights, appoint a legal guardian for the minor and issue letters of guardianship. [¶] (4) Order that the minor be placed in long-term foster care, subject to the regular review of the juvenile court."

Subdivision (c) sets out the procedures to be followed by the court in making its election. Pursuant to paragraph (1), the court "shall terminate parental rights if it determines by clear and convincing evidence that it is likely that the minor will be adopted. The findings . . . that reunification services shall not be offered, or the findings . . . that the whereabouts of a parent have been unknown for six months or that the parent has failed to visit or contact the child for six months or that the parent has been convicted of a felony indicating parental unfitness, or pursuant to Section 366.21 or Section 366.22 that a minor cannot or should not be returned to his or her parent or guardian, are a sufficient basis for termination of parental rights unless the court finds that termination would be detrimental to the minor due to one of the following circumstances: [¶] (A) The parents or guardians have maintained regular visitation and contact with the minor and the minor would benefit from continuing the relationship. [¶] (B) A minor 10 years of age or older objects to termination of parental rights. [¶] (C) The child is placed in a residential treatment facility, adoption is unlikely or undesirable, and continuation of parental rights will not prevent finding the child a permanent family placement if the parents cannot resume custody when residential care is no longer needed. [¶] (D) The minor is living with a relative or foster parent who is unable or unwilling to adopt the minor because of exceptional circumstances, which do not include an unwillingness to accept legal responsibility for the minor, but who is willing and capable of providing the minor with a stable and permanent environment and the removal of the minor from the physical custody of his or her

relative or foster parent would be detrimental to the emotional well-being of the minor."[4]

Paragraph (2) comes into play when the court finds termination would *not* be detrimental *and* "the minor has a probability for adoption but is difficult to place for adoption and there is no identified or available prospective adoptive parent . . . ." In that instance, "the court may identify adoption as the permanent placement goal and without terminating parental rights, order that efforts be made to locate an appropriate adoptive family for the minor for a period not to exceed 60 days. . . . At the expiration of this period, another hearing shall be held and the court shall proceed pursuant to paragraph (1), (3), or (4) of subdivision (b). For purposes of this section, a minor may only be found to be difficult to place for adoption if there is no identified or available prospective adoptive parent for the minor because of the minor's membership in a sibling group, or the presence of a diagnosed medical, physical, or mental handicap, or the minor is the age of seven years or more."

Here, the permanency hearing report indicated a few foster parents were *considering* adoption. This is a far cry, however, from the clear and convincing evidence required to establish the *likelihood* of adoption. " 'Clear and convincing' evidence requires a finding of high probability. The evidence must be so clear as to leave no substantial doubt. It must be sufficiently strong to command the unhesitating assent of every reasonable mind. [Citations.]" (*In re David C.* (1984) 152 Cal.App.3d 1189, 1208 [200 Cal.Rptr. 115].)

Of course, it is not necessary pursuant to section 366.26, subdivision (c)(1) that the child, at the time of the termination hearing, already be in a potential adoptive home. Rather, what *is* required is clear and convincing evidence of the *likelihood* that adoption will be realized within a reasonable time. Consequently, in light of the SSA's failure to present adequate evidence of adoptability, the court should not have terminated his parental rights. Indeed, in the absence of clear and convincing evidence to satisfy the statute, it is error to leave a child without any parent.[5]

---

[4] The statute was amended effective January 1, 1991. (Stats. 1990, ch. 1530, § 7.) Among other things, the words "only" and "first" were added to the first sentence of subdivision (c)(1), which now reads, "It shall terminate parental rights only if it *first* determines by clear and convincing evidence that it is likely that the minor will be adopted." (Italics added.)

In bringing the amendment to our attention, appellant assured us it was not his position the changes should be applied retroactively. Rather, he asserted "the 1991 changes are intended to clarify the original meaning of the statute and to prevent any misinterpretation."

[5] In light of our conclusion, we do not reach appellant's contentions the SSA's search for his whereabouts was inadequate, the resulting failure to notify him of the hearing constituted a denial of due process, and the court erred in failing to consider the wishes of 10-year-old Amelia, as mandated by section 366.26, subdivision (g).

The judgments are reversed and the matter is remanded to the trial court for a new permanency hearing in accordance with the views expressed herein.

Sills, P. J., and Moore, J., concurred.